IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

VALERIE KUHN,                         )
                    Plaintiff,        )
                                      )
            v.                        )        Civil Action No. 05-409
                                      )        Chief Judge Donetta W. Ambrose
JOANNE B. BARNHART,                   )        Magistrate Judge Lisa Pupo Lenihan
COMMISSIONER OF SOCIAL                )
SECURITY,                             )
                    Defendant.        )


REPORT AND RECOMMENDATION


I.      Recommendation

        It is respectfully recommended that the Plaintiff's Motion for Summary Judgement be

denied, that the Defendant's Motion for Summary Judgment be granted, and that the decision of

the Commissioner of Social Security to deny Plaintiff's application be affirmed.


II.     Report

        Presently before the Court for disposition are cross motions for summary judgment.

        A.  Procedural History

        On March 24, 2005, Valerie Kuhn ("Plaintiff"), by her counsel, timely filed a complaint

pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3) for review of the Commissioner's final

determination disallowing her claim for Supplemental Security Income ("SSI") under the Social

Security Act, as amended (the "Act").  The procedural history in this matter is as follows:

In August, 2000, Plaintiff filed an application for SSI alleging that she was disabled owing to Multiple Sclerosis ("MS") symptoms, including numbness, migraine headaches, and fatigue. A hearing was held before an Administrative Law Jaw (the "ALJ") in September, 2001, and Plaintiff's application for SSI was denied by Decision dated November 24, 2001. The ALJ determined that Plaintiff retained the residual capacity to perform sedentary work. See November 2001 Decision. Following denial by the Appeals Council, Plaintiff sought review by this Court. By Order of June 12, 2003, the District Court adopted the Report and Recommendation of Magistrate Judge Caiazza, and remanded the case for further proceedings. More specifically, this Court concluded that the ALJ had failed to sufficiently assess Plaintiff's subjective complaints and, more importantly, had improperly based his decision solely on the Medical Vocational Guidelines of Appendix 2 (the "Grids") in violation of Sykes v. Apfel, 228 F.3d 259 (3d Cir. 2000). See Report and Recommendation, Civil Action No. 02-929, at pp. 10-14. The Court directed that Defendant properly assess Plaintiff's subjective complaints and the effect of Plaintiff's combined exertional and non-exertional impairments (*e.g.*, pain, fatigue) on her residual functional capacity.

While the appeal was pending, Plaintiff filed a new application on January 13, 2002, which application was denied by the ALJ on March 15, 2003. Following denial by the Appeals Council, this Court affirmed the ALJ's Decision. See September 7, 2004 Order in Civil Action No. 03-1148. At that time, the Court found that Plaintiff's disability had not lasted for the requisite twelve months because she undertook some employment in October, 2002. See Plaintiff's Brief in Support of Motion for Summary Judgment ("Plaintiff's Brief") at 2.

Finally, on May 8, 2003, Plaintiff filed a third application for SSI "which was initially denied and subsequently merged with the first application upon remand." See id.  A hearing was held on February 9, 2004, and the ALJ again denied Plaintiff's claim by Decision dated May 26, 2004 (the "May 2004 Decision" or the "Decision").  The ALJ again concluded that Plaintiff was not disabled within the meaning of the Act .  The Appeals Council denied Plaintiff's Request for Review on February 7, 2005 and Plaintiff's Complaint in this action was timely filed thereafter.

Plaintiff's Brief  asserts that the ALJ erred in determining that Plaintiff's allegations regarding her limitations were not fully credible and relying on a hypothetical which failed to include the full scope of Plaintiff's limitations (i.e., Plaintiff's need for rest periods to avoid exacerbation of her MS symptoms and her migraine headaches).  See Plaintiff's Brief at 8.

B.  Statement of Facts

Plaintiff is a young woman initially diagnosed with relapsing and remitting Multiple Sclerosis ("MS") in the Summer of 2000, when she experienced facial and right-side numbness, decreased coordination and balance, severe headaches and fatigue.  She has had significant relapses, or "flare-ups" of her MS in January, 2001; May, 2001; August, 2001 and November, 2003.[1]  See Plaintiff's Brief at 5-6.  Treatment for Plaintiff's relapses has included hospitalization, emergency room care, IVs, prednisone/steroids, and suspension of normal daily activities. Plaintiff's flare-ups have lasted from three days to several weeks.  See id.  Her other medical conditions have included depression, obesity, and right knee pain (chondromalacia patella).

---

1.  During November, 2003, she also experienced MS-related optic neuritis, causing a temporary loss of vision.

At the time of her diagnosis, Plaintiff was attending undergraduate studies at Edinboro University of Pennsylvania.  Various accommodations were thereafter made to enable her to continue her studies, including air conditioning in her room, rest periods, utilization of books on tape, and occasional excused absences from class.  Utlimately, in 2003, Plaintiff elected to discontinue her studies.  See R. at 460.

Plaintiff has no significant work history.  Her only previous employment was providing personal care for (1) a disabled woman on a fill-in basis for the woman's regular caregiver, (2) another disabled woman, apparently a friend, and (3) Plaintiff's wheel-chair bound boyfriend, who has cerebral palsy and also resided with Plaintiff 's mother or brother.  In each of those cases, Plaintiff was able to rest as necessary and her parents were available to provide supplemental assistance when Plaintiff's MS affected her ability to perform the necessary tasks (*e.g.*, when she was incapacitated by headache).  See Plaintiff's Brief at 8.  The ALJ did not consider this work to be "substantial gainful activity."  Plaintiff has since discontinued this employment.

Plaintiff represents that she experiences severely debilitating headaches every one to two weeks and that these headaches are unrelieved by medication.  See Plaintiff's Brief at 5.[2]  She also experiences dizziness and heat intolerance (*i.e.*, physical exertion in warm temperatures causes fatigue, headache, and illness).  Moreover, Plaintiff testifies that she experiences serious fatigue that restricts her ability to perform daily activities.  Plaintiff attests, somewhat

_____

2.  See also id. (stating that these headaches last from two to three hours to a full day); id. at 7 (stating that approximately every two weeks the headache lasts all day and is completely incapacitating); id. at 8 (asserting that the migraines occur "as frequently as two to three times a week").  Compare Record at 310 (April, 2001 medical record documenting significant headaches occuring "a couple of times per week" and lasting "30 to 60 minutes").

inconsistently, that she must lie down approximately one hour each day (id. at 5) or nap for approximately one hour two to three times per day (id. at 7).[3]  Similarly, she reports requiring a rest period, with no activity, of 15 to 30 minutes every three to four hours (id. at 5), or rest periods of up to one hour every two to three hours (id. at 6).  She also reports being confined to bed by fatigue one or two days each month.

The medical records confirm that, as a result of her MS, Plaintiff has suffered from heat sensitivity, adverse effects of over-exertion, migraine headaches, and some degree of fatigue. More particularly, during 2000 and 2001, Plaintiff treated with Dr. Kimberly Atkinson, a neurologist ("Dr. Atkinson"), who prescribed Neurontin and other medications for Plaintiff's MS symptoms and a codeine pain medication for her migraines.  Plaintiff was seen by Dr. Atkinson at approximately three to four month intervals, and the documentation of those visits indicates that her symptoms were "very well controlled" and responsive to her medications.  See, e.g., Record ("R.") at 310; see also R. at 331 (August, 2001 notations that Plaintiff was not experiencing headaches, was feeling well, and preparing for the start of her next college semester, and scheduling next visit four months hence).

During 2002 and 2003, Plaintiff treated with Dr. Galen Mitchell, another neurologist ("Dr. Mitchell"), who prescribed medications for her MS symptoms, including her headaches and fatigue, and saw Plaintiff at approximately three to four month intervals.  At her second visit with Dr. Mitchell, in January, 2003, Plaintiff reported that the Depakote he prescribed improved her headaches; at her third visit, in April, 2003, she reported that it had eliminated them.  See R.

---

3.  See also id. at 8 (attesting that Plaintiff "naps once a day for one or two hours").

at 390-93, 472-75.[4]  Accordingly, Dr. Mitchell concluded that Plaintiff was "doing quite well with regard to her multiple sclerosis and her migraine headaches" and that her headaches were "under excellent control."  R. at 391.

The records of Plaintiff's family physician, Dr. Joyce Eckard, similarly note that Plaintiff did well with her MS treatment.  See, e.g., R. at 287 (January 2001 notation to that effect); R. at 460 (February 2003 notation reporting some hand numbness as only MS symptom).

C.  "Substantial Evidence" Standard of Review

In reviewing an administrative determination of the Commissioner, the question before any court is whether there is substantial evidence in the agency record to support the findings of the Commissioner that the plaintiff failed to sustain her burden of demonstrating that she was disabled within the meaning of the Social Security Act. 42 U.S.C. § 405(g).  See also, e.g., Richardson v. Perales, 402 U.S. 389 (1971); Adorno v.  Shalala,  40  F.3d 43  (3d Cir. 1994).

 More specifically, 42 U.S.C. Section 405(g) provides:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.  The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .

Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1000) (citing Pierce v. Underwood, 487 U.S. 552, 565 (1988)); Plummer v. Apfel, 186 F.3d 422 (3d Cir. 1999).  Although there may be contradictory evidence in the record, and/or although this

---

4.  Compare supra text at n. 2.

Court may have found otherwise, it is not cause for remand or reversal of the Commissioner's

decision if substantial support exists.  Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000).

    D.  Disability Evaluation

    The issue before the Court for immediate resolution is a determination of whether or not

there is substantial evidence to support the findings of the Commissioner that the plaintiff was

not disabled within the meaning of the Act.

    The term "disability" is defined in 42 U.S.C. Section 423(d)(1)(A) as:

> inability to engage in any substantial gainful activity by reason of any medically
> determinable physical or mental impairment which can be expected to result in
> death or which has lasted or can be expected to last for a continuous period of not
> less than 12 months . . . .

    The requirements for a disability determination are provided in 42 U.S.C. Section

423(d)(2)(A):

> An individual shall be determined to be under a disability only if his physical or
> mental impairment or impairments are of such severity that he is not only unable
> to do his previous work but cannot, considering his age, education, and work
> experience, engage in any other kind of substantial gainful work which exists in
> the national economy, regardless of whether such work exists in the immediate
> area in which he lives, or whether a specific job vacancy exists for him, or
> whether he would be hired if he applied for work.  For purposes of the preceding
> sentence  . . . 'work which exists in the national economy' means work which
> exists in significant numbers either in the region where such individual lives or in
> several regions of the country.

    A "physical or mental impairment" is "an impairment that results from anatomical,

physiological, or psychological abnormalities which are demonstrable by medically acceptable

clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).[5]

---

5.  In reviewing a disability claim, the Commissioner must consider subjective symptoms as well
as the medical and vocational evidence.  See Green v. Schweiker, 749 F.2d 1066, 1068 (3d Cir.

(continued...)

Finally, the applicable regulations set forth a more explicit five-step evaluation to determine disability.  The regulations, published at 20 C.F.R. §§ 404.1501-1529, set forth an orderly and logical sequential process for evaluating all disability claims.[6]  In this sequence, the ALJ must first decide whether the plaintiff is engaging in substantial gainful activity.  If not, then the severity of the plaintiff's impairment must be considered.  If the impairment is severe, then it must be determined whether she meets or equals the "Listings of Impairments" in Appendix 1 of the Regulations which the Commissioner has deemed of sufficient severity to establish disability.  If the impairment does not meet or equal the Listings, then it must be ascertained whether she can do her past relevant work.  If not, then the residual functional capacity of the plaintiff must be ascertained, considering all the medical evidence in the file, to assess whether

---

5.  (...continued)
1984) (explaining that "subjective complaints of pain [should] be seriously considered, even where not fully confirmed by objective medical evidence"); Bittel v. Richardson, 441 F.2d 1193, 1195 (3d Cir. 1971) ("Symptoms which are real to the claimant, although unaccompanied by objective medical data, may support a claim for disability benefits, providing, of course, the claimant satisfies the requisite burden of proof.").

In assessing a plaintiff's subjective complaints, the ALJ may properly consider them in light of the other evidence of record, including objective medical evidence, plaintiff's other testimony, and plaintiff's description of her daily activities.  See Hartranft v. Apfel, 181 F.3d 358, 362 (3d Cir. 1999).  And so long as a plaintiff's subjective complaints have been properly addressed, the ALJ's decisions in that regard are subject only to the substantial evidence review discussed in Section C, supra.  See Good v. Weinberger, 389 F. Supp. 350, 353 (W.D. Pa. 1975) (discussing Bittel and concluding that where  "plaintiff did not satisfy the fact finder in this regard, so long as proper criteria were used, [it] is not for us to question"); see also Kephart v. Richardson, 505 F.2d 1085, 1089 (3d Cir. 1976) (noting that credibility determinations of ALJ are entitled to deference).  See also discussion infra at pp. 9-10.

6.  This evaluation process has been repeatedly reiterated with approval by the United States Supreme Court.  See, e.g., Barnhart v. Thomas, 124 S.Ct. 376, 379-80 (2003).

the plaintiff has the ability to perform other work existing in the national economy in light of

plaintiff's age, education and past work experience.[7]

     While these statutory provisions may be regarded as harsh; nevertheless, they must be

followed by the courts.  NLRB v. Staiman Brothers, 466 F.2d 564 (3d Cir. 1972); Choratch v.

Finch, 438 F.2d 342 (3d Cir. 1971); Woods v. Finch, 428 F.2d 469 (3d Cir. 1970).  Thus, it must

be determined whether or not there is substantial evidence in the record to support the conclusion

of the Commissioner that Plaintiff was not disabled within the meaning of the Social Security

Act.

     E.  Analysis

     As noted above, Plaintiff complains on appeal that the ALJ erred in determining that

Plaintiff's allegations regarding her limitations were not fully credible and relying on a

hypothetical which failed to include the full scope of Plaintiff's limitations.

     (1)  Plaintiff's Subjective Evidence of Functional Limitations

     As an initial matter, Plaintiff mischaracterizes the law in asserting that her "complaints . .

. are treated as credible unless competent evidence to the contrary can be shown." Plaintiff's

Brief at 8.  To the contrary, the standard in this Circuit requires that "(1) subjective complaints of

---

7.  The finding of residual functional capacity is the key to the remainder of findings under the regulations.  If the plaintiff's impairment is exertional only, (i.e. one which limits the strength he can exert in engaging in work activity), and if her  impairment enables her to do sustained work of a sedentary, light or medium nature, and the findings of age, education and work experience, made by the ALJ coincide precisely with one of the rules set forth in Appendix 2 to the regulations, an appropriate finding is made.  If the facts of the specific case do not coincide with the parameters of one of the rules, or if the plaintiff has mixed exertional and non-exertional impairments, then the rules in Appendix 2 are used as guidelines in assisting the ALJ to properly weigh all relevant medical and vocational facts.

pain be seriously considered, even where not fully confirmed by objective medical evidence,[8] (2) subjective pain may support a claim for disability benefits and may be disabling; (3) where such complaints are supported by medical evidence, they should be given great weight; and (4) where a claimant's testimony as to pain is reasonably supported by medical evidence, the ALJ may not discount claimant's pain without contrary medical evidence."  Green v. Schweiker, 749 F.2d 1066, 1068 (3d Cir. 1984).

Accordingly, in cases where, for example, the treating physician substantiates, on the basis of the objective medical evidence, subjective symptoms and/or alleged degree of disability, the ALJ may not disregard or discredit those subjective complaints, or the physician's opinion, without evidence to the contrary.  Where, however, neither the underlying objective medical records, nor the opinions of the treating physicians, reflect or support the degree of subjective complaints made, the ALJ's decision must simply reflect serious  consideration of the degree to which those complaints support a plaintiff's claim.  See Plaintiff's Brief at 10 (citing this Court's observance, in Heverly v. Commissioner, that an ALJ must "consider . . . the extent to which . . . subjective symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence").

Thus, the more fundamental difficulty with Plaintiff's appeal is her error in asserting that "her hearing testimony [was] a mirror reflection of the complaints she made to her treating professionals"[9] and the lack of medical evidence to support her subjective complaints.  Although, for example, Plaintiff is quite correct to note that "[t]he most common complaint of MS patients

---

8.  See discussion supra, n. 5.

9.  Plaintiff's Brief at 8-9.

is fatigue",[10] the question at issue in the ALJ's determination remained the medically-supported *extent* of Plaintiff's disability, *i.e.*, whether she remained able to undertake any substantial gainful employment. And, subject to the above standard, credibility determinations as to a plaintiff's testimony of complaints and limitations are within the province of the ALJ. See Van Horn v. Schwiker, 717 F.2d 871, 873 (3d Cir. 1983).

In the instant case, the ALJ's Decision reflects that he appropriately considered the evidence of record and that substantial evidence supported his determination. The ALJ is only required to complete an appropriate scope of review, he is not required to reach conclusions which comport with Plaintiff's. In addition, while an ALJ must "give specific reasons for the weight given to [the plaintiff's] statements" (SSR 96-7p), the Decision points to specific evidence of record in support of that determination. See R. at 347-54 (May 2004 Decision).

Plaintiff correctly observes that a physician's statement that a patient is "doing quite well" or that her migraines are "under excellent control", may simply reflect an assessment "relative to her baseline condition." Plaintiff's Reply Brief at 2 (citing Heverly v. Commissioner). In this case, however, as discussed *supra*, there are more specific notations in the medical records detailing Plaintiff's condition.[11]

---

10. Id. at 9 (citing Multiple Sclerosis Foundation website, www.msfacts.org)

11. See, *e.g.*, R. at 390-91 (Report of Dr. Mitchell stating that Plaintiff's headaches were "under excellent control", but also indicating that Plaintiff had "no further headaches since starting Depakote" and that "her only neurologic symptom [was] mild right had tremor" on occasion") R. at 468 (same, reporting that Plaintiff suffered approximately one mild headache per week); R. at 470 (same, indicating that Plaintiff reported responsiveness to her pain medication and that she was experiencing "normal headaches" but no migraines); R. at 200 (Report of Dr. Atkinson that treatment of Plaintiff's headache with codeine medication "took the headache away"); R. at 331 (same reporting that Plaintiff was "feeling well . . . and not having any headaches", with follow up in four months). Cf. R. at 520 (Plaintiff's hearing testimony that she could sustain sedentary

(continued...)

In addition, in light of the record taken as a whole, Dr. Atkinson's August 23, 2001 letter,[12] which Plaintiff cites as "confirm[ing]" her "intolerance for continuous activity" and need for "frequent rest periods",[13] is simply insufficient grounds for reversal of the ALJ's Decision. Indeed, the context of that letter is as a discussion of Plaintiff's suffering "residual effects from a recent episode" of "mild exacerbation" of her MS symptoms, and its language appears directed against prolonged physical activity/exertion as opposed to more sedentary activities.[14] Moreover, again, the letter is properly read in the context of Dr. Atkinson's complete medical records.

Finally, this Court must disagree with Plaintiff's reading of the case law to the extent it suggests that the ALJ was required to marshal additional medical evidence to disprove Plaintiff's subjective complaints. See Plaintiff's Brief at 11 . Although subjective evidence may support a disability claim, subjective complaints do not themselves constitute disability. See Green v.

---

11. (...continued)
activities for  four hours at most before experiencing fatigue).

12. See R. at 333.

13. Plaintiff's Reply Brief at 1.

14. R. at 308.  Plaintiff reported that her relapse occurred when she spent a day in the sun at the beach.  This was not the first time that Plaintiff's physical exertion in warm, outdoor weather triggered a relapse of her MS symptoms.  At her follow-up appointment less than three weeks later, Dr. Atkinson noted that Plaintiff's symptoms had resolved, and wrote the letter cautioning that Plaintiff

> needs to avoid exposure to heat and needs to rest frequently.  She cannot endure long periods of activity and long periods of standing. She needs to keep a regular meal and sleep schedule. She should be provided with air-conditioned environments during the warm weather.

R. at 199.

Schweiker, 749 F.2d 1066, 1071 (3d Cir. 1984).  To the contrary, it remained Plaintiff's burden to establish her disability within the meaning of the Act and her subjective complaints did not shift the burden of proof to the ALJ.

The ALJ concluded that the medical evidence of  record  did not support the degree of disability alleged by Plaintiff and the ALJ's discussion of this matter was sufficiently well-reasoned to meet our deferential standard of review.   The records of Plaintiff's treatment were considered by the ALJ and he evaluated them as a whole, finding that they failed to corroborate Plaintiff's assertions of the extent of her disability.  He included specific, accurate references to the evidence supporting the Decision and explained the rationale for his determination.  Thus it appears that the ALJ adequately analyzed Plaintiff's testimony and other relevant evidence and that said evidence was sufficient to support the ALJ's determination that Plaintiff remained capable of performing light work.[15]

(2)  Scope of Hypothetical

As Plaintiff implicitly concedes, if the hypotheticals posed to the Vocational Expert by the ALJ accurately portrayed Plaintiffs' impairments and limitations, the ALJ was entitled to rely upon them in the course of his decision.  Cf. Chrupcala v. Heckler, 829 F.2d 1269 (3d Cir. 1987) (requiring that hypothetical posed to VE should reflect each of claimant's impairments supported by the objective medical findings in the record).  Because in this case the hypotheticals (a) reflected an assessment of Plaintiff's work-related limitations supported by substantial evidence,

---

15.   The ALJ's determination of functional capacity, as reflected in the hypothetical proposed to the Vocational Expert, encompasses the ALJ's reasonable conclusions as to Plaintiff's restrictions.  See discussion, *supra*.

and (2) fairly described those limitations with sufficient specificity, the questions were not defective and the Vocational Expert's answers were properly considered.

As the weight to be accorded Plaintiff's testimony was within the ALJ's discretion, subject to our substantial evidence standard of review, see *supra*, and there was "such relevant evidence as a reasonable mind might accept as adequate" supporting the ALJ's determination,[16] this Court cannot say as a matter of law that the ALJ erred.

This Court is not unsympathetic to Plaintiff's physical difficulties.  The record before this Court will, nonetheless, simply not support a reversal of the ALJ's decision in this case under the applicable standard of review.


III. Conclusion

For the reasons discussed above, the Commissioner's  conclusion is supported by substantial evidence.  For these reasons, it is recommended that Plaintiff's Motion for Summary Judgment be denied, that Defendant's Motion for Summary Judgment be granted, and that the decision of the Commissioner be affirmed.  Plaintiff remains free, of course, to reapply for benefits should, *e.g.*, her treating physicians conclude that the nature of her illness becomes such as to entirely disable her from substantial gainful employment, and to submit further medical records in support of any such application.

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.1.4(B) of the Local Rules for Magistrates, within ten (10) days after being served with a copy, any party may serve and file written objections to this Report and Recommendation.  Any party

---

16. Venture v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995).

opposing the objections shall have seven (7) days from the date of service of objections to

respond thereto.  Failure to file timely objections may constitute a waiver of any appellate rights.


Respectfully submitted,


s/Lisa Pupo Lenihan
LISA PUPO LENIHAN
United States Magistrate Judge


Dated: February  7, 2006


cc:     Honorable Donetta W. Ambrose
        Chief Judge, United States District Court

        Terry K. Wheeler
        56 Clinton Street
        Greenville, PA  16125

        Lee Karl
        Office of the United States Attorney
        700 Grant Street
        Suite 400
        Pittsburgh, PA  15219